[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11707
Non-Argument Calendar
_____

Agency No. A078-477-167


SAFET MUSTAFIC,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(November 12, 2014)

Before TJOFLAT, WILSON and JORDAN, Circuit Judges.

PER CURIAM:

Safet Mustafic, a native of Yugoslavia and a citizen of Bosnia and Herzegovina, petitions for review of the Board of Immigration Appeals' (BIA) order affirming the Immigration Judge's (IJ) order denying his applications for adjustment of status under 8 U.S.C. § 1159(b), in conjunction with a waiver of inadmissibility under 8 U.S.C. § 1159(c); and the denial of his motion to remand to apply for asylum, withholding of removal, and relief under the United Nations Convention Against Torture (CAT).  On appeal, Mustafic argues: (1) the agency applied the wrong legal standard in denying his applications for adjustment of status and a waiver of inadmissibility; (2) the agency erred in finding that he was a "violent or dangerous individual" due to his conviction for vehicular homicide; and (3) the BIA abused its discretion in denying his motion to remand.

## I.

We consider questions concerning our jurisdiction de novo.  *Jaggernauth v. U.S. Att'y Gen.*, 432 F.3d 1346, 1350 (11th Cir. 2005) (per curiam).  Pursuant to 8 U.S.C. § 1252(a)(2)(C), we lack jurisdiction to review a final order of removal against an alien who is inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I), for having been convicted of a crime involving moral turpitude (CIMT). 8 U.S.C. § 1252(a)(2)(C).  Our jurisdiction to review discretionary decisions is also statutorily limited.  *Jimenez-Galicia v. U.S. Att'y Gen.*, 690 F.3d 1207, 1209 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 2824 (2013).  Section 1252(a)(2)(B)(ii) of Title

2

8 divests courts of jurisdiction to consider "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security," other than the granting of asylum relief.  8 U.S.C. § 1252(a)(2)(B)(ii); *Kucana v. Holder*, 558 U.S 233, 252–53, 130 S. Ct. 827, 839–40 (2010) (concluding that the discretionary decision bar did not apply to decisions made discretionary by regulation).  We have further held that we lack jurisdiction over the BIA's purely discretionary determination that an alien has failed to satisfy the "exceptional and extremely unusual hardship" requirement for cancellation of removal.  *Martinez v. U.S. Att'y Gen.*, 446 F.3d 1219, 1221–22 (11th Cir. 2006) (construing § 1252(a)(2)(B)(i), which precludes review of "any judgment regarding the granting of relief under" the cancellation of removal statute) (internal quotation marks omitted); *Gonzalez-Oropeza v. U.S. Att'y Gen.*, 321 F.3d 1331, 1332–33 (11th Cir. 2003) (per curiam).

However, notwithstanding these statutory provisions, we retain jurisdiction to review constitutional claims and questions of law.  8 U.S.C. § 1252(a)(2)(D); *Alvarez Acosta v. U.S. Att'y Gen.*, 524 F.3d 1191, 1195–96 (11th Cir. 2008).  We review questions of law de novo.  *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).  Whether the agency applied an incorrect legal standard presents a question of law over which we retain jurisdiction.  *Frech v. U.S. Att'y*

3

*Gen.*, 491 F.3d 1277, 1281 (11th Cir. 2007).  However, a "garden-variety abuse of discretion argument" that the agency failed to properly weigh the facts does not amount to a question of law under 8 U.S.C. § 1252(a)(2)(D).  *See Alvarez Acosta*, 524 F.3d at 1196–97.

An alien who has been convicted of a CIMT is not admissible to the United States and is ineligible for adjustment of status.  8 U.S.C. § 1182(a)(2)(A)(i)(I).  However, the Attorney General and the Secretary of Homeland Security have permissive discretion to waive a refugee's inadmissibility "for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest."  *Id.* § 1159(c).  A waiver permits an inadmissible refugee to obtain lawful permanent residency, provided that the refugee also meets the other specified requirements.  *Id.* § 1159(a)–(b).

## II.

As a preliminary matter, we must determine whether we have jurisdiction over Mustafic's petition for review.  Mustafic conceded removability under 8 U.S.C. § 1182(a)(2)(A)(i)(I), as an alien inadmissible for having been convicted of a CIMT.  *See id.* § 1182(a)(2)(A)(i)(I).  Thus, Mustafic is only eligible to adjust status if he can obtain a § 1159(c) waiver.  *See id.* § 1159(c).  The IJ and BIA's decision to deny Mustafic's application for a waiver of inadmissibility under § 1159(c) is a discretionary determination that falls within the jurisdiction-stripping

provision of 8 U.S.C. § 1252(a)(2)(B)(ii).  *See id.* § 1252(a)(2)(B)(ii); *see also Makir-Marwil v. U.S. Att'y Gen.*, 681 F.3d 1227, 1234 n.4 (11th Cir. 2012) (stating that we lack jurisdiction to review the discretionary denial of a waiver of inadmissibility).  Our jurisdiction is also limited by the criminal alien jurisdiction-stripping bar under 8 U.S.C. § 1252(a)(2)(C), as Mustafic is inadmissible due to his CIMT conviction.  *See*  8 U.S.C. § 1252(a)(2)(C).  Thus, we retain jurisdiction over the petition for review only to the extent that Mustafic raises questions of law or constitutional claims.  *See id*. § 1252(a)(2)(D).  Because Mustafic's argument that the agency applied the wrong legal standard to determine that he was subject to the heightened "extraordinary circumstances" standard raises a question of law, we retain jurisdiction to review this argument.  *See Frech*, 491 F.3d at 1281; *see also Makir-Marwil*, 681 F.3d at 1234 n.4 (noting that a challenge to the legal standard used by the IJ and BIA relating to a waiver under § 1159(c) was a question of law).

In *In re Jean*, the Attorney General overturned a BIA decision that had granted an inadmissibility waiver to a Haitian refugee convicted of second-degree manslaughter for beating and shaking a baby to death.  23 I. & N. Dec. 373, 374–75 (A.G. 2002).  The Attorney General articulated a heightened standard for waiving the inadmissibility of refugees who are found to be "violent or dangerous individuals," requiring those individuals to prove the existence of "extraordinary

5

circumstances, such as those involving national security or foreign policy considerations, or cases in which an alien clearly demonstrates that the denial of status adjustment would result in exceptional and extremely unusual hardship." *Id.* at 383. However, even if the alien shows "extraordinary circumstances," that may not be enough to warrant relief depending on the gravity of the alien's underlying criminal conviction. *Id.*

After *In re Jean*, in § 1159(c) waiver cases, we have stated that the first determination is whether the refugee is a "violent or dangerous individual." *Makir-Marwil*, 681 F.3d at 1229. If the refugee is not violent or dangerous, the general statutory standard for a § 1159(c) waiver applies, and the refugee must show only that the waiver would serve humanitarian purposes, assure family unity, or otherwise be in the public interest. *Id.*; *see also* 8 U.S.C. § 1159(c). However, a refugee found to be "violent or dangerous" must satisfy both the statutory standard in § 1159(c) and the heightened, "extraordinary circumstances" outlined in *In re Jean*. *Makir-Marwil*, 681 F.3d at 1229.

In *Makir-Marwil*, we addressed whether *Matter of Jean* required a "fact-based" or categorical analysis of Makir-Marwil's prior convictions to determine whether he was a "violent or dangerous individual." 681 F.3d at 1233–35. We noted that we had jurisdiction to decide the legal issue of which standard applied. *Id.* at 1234 n.4. Makir-Marwil had argued that *In re Jean* required the IJ

6

to conduct a "fact-based" approach and look to the underlying circumstances of each prior crime to determine whether he was a "violent or dangerous individual." *Id.* at 1234.  We rejected Makir-Marwil's argument, and held that, in determining whether a refugee's conviction renders him a "violent or dangerous individual," *In re Jean* requires neither a fact-based nor categorical approach, but rather requires only an "adequate consideration of the nature of the refugee's crime."  *Id.* at 1235. The IJ must "only make an appropriate determination under the circumstances as to whether the alien is violent or dangerous."  *Id.*  We noted that for "serious and depraved" crimes, "the IJ need only consider the elements of the offense," but "[s]ometimes the IJ may delve into the facts and circumstances of the prior offenses to determine whether the alien is violent or dangerous."  *Id.*

Mustafic argues that the BIA erred by focusing on language from the headnote in *In re Jean*, whether he committed a "violent or dangerous crime," rather than the language of the decision itself, which focuses on whether the alien is a "violent or dangerous individual."  However, Mustafic's argument is misplaced because we have explained that in making the determination of whether an alien is a violent or dangerous individual, all *In re Jean* "requires is an adequate consideration of the nature of the refugee's crime."  *Makir-Marwil*, 681 F.3d at 1235.  Here, the IJ and BIA adequately considered the nature of Mustafic's conviction for vehicular homicide by examining the elements of the crime before

determining that he committed a violent or dangerous crime. *See id.* Because the IJ and BIA determined that Mustafic was a "violent or dangerous individual," the IJ and BIA correctly applied the heightened "extraordinary circumstances" standard. *See Makir-Marwil*, 681 F.3d at 1235; *see also In re Jean*, 23 I. & N. Dec. at 383. Thus, we deny this claim.

To the extent Mustafic argues that the IJ and BIA erred in finding that he was a "violent or dangerous individual," this is a factual or discretionary determination that we do not have jurisdiction to review. In *Bedoya-Melendez v. U.S. Att'y Gen.*, 680 F.3d 1321 (11th Cir. 2012), we held that the battered-spouse determination under 8 U.S.C. § 1229b(b)(2) was a discretionary decision, which we did not have jurisdiction to review. 680 F.3d at 1323, 1325. First, we noted that "[a] question of law involves the application of an undisputed fact pattern to a legal standard." *Id.* at 1324 (internal quotation marks omitted). On the other hand, a discretionary determination "requires an adjudicator to make a judgment call." *Id.* We further stated that the definitions of "battered" and "subjected to extreme cruelty" did not establish objective legal standards. *Id.* at 1325–26. Specifically, those phrases were "not self-explanatory and reasonable minds could differ as to their meaning" in § 1229b(b)(2). *Id.* at 1325.

Because there are no objective legal standards for evaluating the terms "violent or dangerous individual" and because reasonable minds could differ as to

8

the meaning of those terms, this finding is a discretionary determination. *See* 8 U.S.C. § 1252(a)(2)(B)(ii); *Bedoya-Melendez*, 680 F.3d at 1324, 1325–26. Thus, we dismiss this portion of the petition for review.

Similarly, although Mustafic's argument—that the IJ was not permitted to consider his entire criminal history in determining whether he warranted a waiver as a matter of discretion—is couched in legal terms, it amounts to a "garden-variety" abuse of discretion argument because in essence it takes issue with the determination that he was not entitled to a favorable exercise of discretion under the totality of the circumstances. *See Alvarez Acosta*, 524 F.3d at 1196–97. Accordingly, we dismiss this portion of the petition for review. *See* 8 U.S.C. § 1252(a)(2)(B)(ii), (a)(2)(C).

### III.

Finally, we must address whether we have the authority to review the BIA's denial of Mustafic's motion to remand. Although Mustafic's argument—that he was entitled to remand because the IJ failed to advise him of his right to apply for asylum—invokes our jurisdiction because it presents a question of law, it is not justiciable.

As noted earlier, we review questions concerning our jurisdiction de novo. *Jaggernauth*, 432 F.3d at 1350. Pursuant to 8 U.S.C. § 1252(a)(2)(C), we lack jurisdiction to review a final order of removal against an alien who is inadmissible

9

under 8 U.S.C. § 1182(a)(2)(A)(i)(I), for having been convicted of a CIMT.  8 U.S.C. § 1252(a)(2)(C).  We also lack jurisdiction to review determinations made discretionary by statute, other than those related to asylum relief.  *Id.* § 1252(a)(2)(B)(ii); *see also Kucana*, 558 U.S at 252–53, 130 S. Ct. at 840 (concluding that the discretionary decision bar did not apply to decisions made discretionary by regulation).  In addition, we have held that the jurisdiction-stripping provisions of § 1252(a)(2)(B) and (C) apply not only to appellate-court review of final orders of removal, but also to review of subsequent orders, such as motions to reopen.  *See Guzman-Munoz v. U.S. Att'y Gen.*, 733 F.3d 1311, 1313–14 (11th Cir. 2013) (per curiam); *see also Patel v. U.S. Att'y Gen.*, 334 F.3d 1259, 1262 (11th Cir. 2003).  Indeed, we have stated that motions to remand are generally treated as motions to reopen.  *See Chacku v. U.S. Att'y Gen.*, 555 F.3d 1281, 1286 (11th Cir. 2008) (per curiam).  Notwithstanding these statutory provisions, we retain the authority to review constitutional claims and questions of law.  8 U.S.C. § 1252(a)(2)(D).

On the contrary, we have explained that we do not have jurisdiction to review a question of law, where doing so would result in an advisory opinion.  *See Malu v. U.S. Att'y Gen.*, 11th Cir. 2014, __ F.3d__, at *7 (No. 13-10409, August 19, 2014) (noting that, although the determination of whether Congolese wives were a particular social group raised a question of law, it was not justiciable

10

because, even if we determined that they were a particular social group, the BIA concluded that the alien had not shown that she would be persecuted in the future on account of her membership in that group in any event).

Here, the regulations provide that the BIA has discretion to determine whether reopening is warranted, but must deny reopening if the right to apply for discretionary relief was "fully explained" to the alien.  *See* 8 C.F.R. § 1003.2(a), (c)(1).  In denying Mustafic's motion to remand, the BIA concluded that under the circumstances of Mustafic's case, the IJ did not need to explain the right to apply for asylum relief, but in any event, Mustafic's failure to raise the issue until his applications were denied on the merits did not warrant granting the motion to reopen in the exercise of discretion.  Therefore, if we reviewed whether the IJ was required to advise Mustafic of his right to apply for asylum, we would be rendering an advisory opinion because the BIA denied the motion to remand in the exercise of discretion.  *See Malu*, 11th Cir. 2014, __ F.3d at *7.  Consequently, Mustafic's petition is dismissed in part and denied in part.

**PETITION DISMISSED IN PART AND DENIED IN PART.**