[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11751

Non-Argument Calendar

_____

MARCOS ESCALONA-SANCHEZ,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A205-668-995

_____

Before JILL PRYOR, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

Marcos Escalona-Sanchez petitions for review of the Board of Immigration Appeals' final order affirming the immigration judge's denial of his application for cancellation of removal. He argues that the board applied an incorrect legal standard when it determined that he hadn't established that removal would result in "exceptional and extremely unusual hardship" to his United States citizen son. *See* 8 U.S.C. § 1229b(b)(1)(D). He also asserts that the board violated his son's right to substantive due process under the Fifth Amendment and equal protection under the Fourteenth Amendment when it denied his application. After careful review of the record and the parties' briefs, we partly dismiss and partly deny his petition.

I

Escalona-Sanchez is a native and citizen of Mexico who illegally entered the United States in 2000. In 2016, he was convicted of driving under the influence and without a license. His conviction brought him to the attention of immigration officials, and the Department of Homeland Security took him into custody in August 2020.

The department served Escalona-Sanchez with a notice to appear before an immigration judge, which charged that he was removable for being present without being admitted or paroled.

*See id.* § 1182(a)(6)(A)(i). Escalona-Sanchez conceded removability but applied for cancellation of removal. *See id.* § 1229b. As the basis of his application, Escalona-Sanchez asserted that his removal would result in exceptional and extremely unusual hardship to his United States citizen son.

At his hearing before the immigration judge, Escalona-Sanchez testified that he "frequently" spent time "doing a lot of activities" with his eight-year-old son. But he explained that his son lived with his son's mother and had not lived with him for approximately three years. He also testified that his son had asthma, astigmatism, chronic pneumonia, and a learning disability. But a recent medical report documented that his son had "no abnormal findings" and "[n]o problems with asthma"; that his asthma was "mild," "intermittent," and "[w]ell controlled"; that there were "[n]o concerns about [his] vision"; and that his son's mother reported that his son's "academic performance [was] good." And while Escalona-Sanchez testified that he planned to bring his son with him to Mexico if he were removed, he conceded that his son's mother would not allow him to take their son back to Mexico. His son's mother worked and financially supported his son while Escalona-Sanchez was detained.

The immigration judge denied Escalona-Sanchez's application for cancellation of removal. "Considering all the factors in the aggregate," the immigration judge determined that Escalona-Sanchez hadn't met his burden of proof to show that his removal would result in exceptional and extremely unusual hardship to his

son.  The immigration judge found that Escalona-Sanchez hadn't shown that his son:  (1) would return to Mexico if Escalona-Sanchez were removed; (2) "suffer[ed] from a serious medical condition that [was] substantially beyond that suffered by other children and would meet the exceptional and extremely unusual hardship requirements"; (3) had a learning disability; or (4) would suffer "exceptional or extreme" financial hardship rather than "the ordinary consequences of one's deportation."

Escalona-Sanchez appealed the immigration judge's decision to the board, arguing that the immigration judge erred in finding that he had failed to establish that his removal would result in exceptional and extremely unusual hardship to his son.  The board affirmed the immigration judge's denial of Escalona-Sanchez's application for cancellation of removal and dismissed his appeal.  Because Escalona-Sanchez's son's mother was "gainfully employed," the board explained, he hadn't shown that "she w[ould] not be able to adequately provide [his son] with needed care and support." And even if Escalona-Sanchez's son accompanied him to Mexico, the board wrote, "he ha[d] not persuasively shown that adequate medical care for the child's claimed conditions would not be reasonably available in Mexico where [Escalona-Sanchez] w[ould] reside."  Thus, "[c]onsidering the totality of the circumstances," the board "agreed with the [i]mmigration [j]udge" and concluded that Escalona-Sanchez "ha[d] not established that, upon his removal, his child w[ould] suffer hardship that is substantially beyond that

which would ordinarily be expected to result from a respondent's removal from the United States."

## II

"We review the [board]'s decision as the final judgment, unless the [board] expressly adopted the [immigration judge]'s opinion." *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019). "When the [board] agrees with the [immigration judge]'s reasoning, we review the decisions of both the [board] and the [immigration judge]." *Id.* We review de novo whether we have subject matter jurisdiction to consider a petition for review. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006).

The Attorney General has discretion to cancel the removal of a nonpermanent resident if he: (1) has been physically in the United States for a continuous period of not less than ten years; (2) has been a person of good moral character; (3) has not been convicted of certain criminal offenses; and (4) establishes that his removal would result in exceptional and extremely unusual hardship to a minor child, spouse, or parent who is a United States citizen or lawful permanent resident. 8 U.S.C. § 1229b(b)(1). Removal proceedings are conducted by immigration judges, who exercise the authority of the Attorney General. *Id.* § 1229a(a)(1); 8 C.F.R. §§ 1240.1(a)(1), 1245.2(a)(1)(i) (2021).

Under the discretionary decision jurisdictional bar, we lack jurisdiction to review "any judgment regarding the granting of"

cancellation of removal.   8 U.S.C. § 1252(a)(2)(B)(i); *see Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1262 (11th Cir. 2020) (en banc), *aff'd sub nom. Patel v. Garland*, 142 S. Ct. 1614 (2022).   We only have jurisdiction to review "constitutional claims or questions of law" that are "colorable." *Patel*, 971 F.3d at 1272 (citing 8 U.S.C. § 1252(a)(2)(D)).   That is, a claim must have "some possible validity." *Arias v. U.S. Att'y Gen.*, 482 F.3d 1281, 1284 n.2 (11th Cir. 2007).   "[A] party may not dress up a claim with legal or constitutional clothing to invoke our jurisdiction," *Patel*, 971 F.3d at 1272, and a "garden-variety abuse of discretion argument . . . does not amount to a legal question under [section] 1252(a)(2)(D)," *Alvarez Acosta v. U.S. Att'y Gen.*, 524 F.3d 1191, 1196–97 (11th Cir. 2008).

Substantive due process is unavailable as a claim for children of deported noncitizens because "[l]egal orders of deportation to [the] parents [of United States citizen children] do not violate any constitutional right of citizen children." *Gonzalez-Cuevas v. Immigr. & Naturalization Serv.*, 515 F.2d 1222, 1224 (5th Cir. 1975). And, under the equal protection component of the Fifth Amendment's Due Process Clause, statutory classifications of immigrants are subject to "minimal scrutiny." *Rivas v. U.S. Att'y Gen.*, 765 F.3d 1324, 1328–29 (11th Cir. 2014). Under this standard, "the alien bears the burden of establishing that the government regulation is arbitrary or unreasonable and not rationally related to the government's purpose." *Id.* at 1329 (alteration adopted).   "[T]he burden lies on the challenging party to demonstrate that no conceivable

21-11751                    Opinion of the Court                    7

basis exists to support the classification." *Resendiz-Alcaraz v. U.S. Att'y Gen.*, 383 F.3d 1262, 1271–72 (11th Cir. 2004).

## III

Escalona-Sanchez makes three arguments on appeal. First, he argues that the board applied an incorrect legal standard because it did not "take into consideration all forms of evidence submitted" and "gave zero importance to all the evidence submitted and concluded that [it] w[as] not persuaded enough." Second, he asserts that the board applied an incorrect legal standard because its use of the word "persuaded" showed "an utter disregard for the law." Third, he contends that the board's denial of his application violated his son's "absolute right" under the Fifth Amendment's Due Process Clause and the Fourteenth Amendment's Equal Protection Clause to "remain together in the United States" with Escalona-Sanchez.[1]

---

[1] We construe Escalona-Sanchez's Fourteenth Amendment equal protection claim as a Fifth Amendment equal protection claim because "it is the business of the political branches of the [f]ederal [g]overnment, rather than that of the [s]tates[,] to regulate the conditions of entry and residence of aliens." *Rodriguez ex rel. Rodriguez v. United States*, 169 F.3d 1342, 1347 (11th Cir. 1999) (cleaned up) (quoting *Mathews v. Diaz*, 426 U.S. 67, 84 (1976)). "So while state laws that discriminate against noncitizens are subject to strict scrutiny under the Fourteenth Amendment, federal laws that discriminate against noncitizens must pass only rational-basis scrutiny under the Fifth Amendment." *United States v. Osorto*, 995 F.3d 801, 811 (11th Cir. 2021) (citations omitted).

We lack jurisdiction to review Escalona-Sanchez's first argument because, while it's couched as a question of law, in substance it challenges the board's weighing of the hardship factors. That's a "garden-variety abuse of discretion argument," *see Alvarez Acosta*, 524 F.3d at 1196, which we don't have jurisdiction to review, *see Patel*, 971 F.3d at 1280 ("[T]he [board]'s factfinding, factor-balancing, and exercise of discretion normally do not involve legal or constitutional questions, so we lack jurisdiction to review them.").

His second argument fails on the merits because the Immigration and Nationality Act requires immigration judges to "determine whether or not the testimony is credible, is *persuasive*, and refers to specific facts sufficient to demonstrate that the applicant has satisfied the applicant's burden of proof."    8 U.S.C. § 1229a(c)(4)(B) (emphasis added); *see Patel*, 142 S. Ct. at 1619 ("[E]ven an eligible noncitizen must persuade the immigration judge that he merits a favorable exercise of discretion."). Thus, the board applied the correct legal standard in determining that Escalona-Sanchez had not "persuasively shown" that his removal would result in exceptional and extremely unusual hardship to his son.

Finally, Escalona-Sanchez's constitutional claims also fail on the merits. "The practice of removing aliens with citizen-children is constitutionally sound." *Marin-Garcia v. Holder*, 647 F.3d 666, 673 (7th Cir. 2011). Escalona-Sanchez's substantive due process claim has no possible validity because the lawful denial of his application for cancellation of removal "d[id] not violate any

constitutional right of [his] citizen child[]." *See Gonzalez-Cuevas*, 515 F.2d at 1224. And, as to his equal protection claim, Escalona-Sanchez hasn't shown that "no conceivable basis exists to support" the "exceptional and extremely unusual hardship" requirement. *See Rivas*, 765 F.3d at 1328–29; *Resendiz-Alcaraz*, 383 F.3d at 1271–72. The "exceptional and extremely unusual hardship standard" survives this review because it is reasonably conceivable that Congress chose to limit cancellation of removal to truly exceptional cases as a response to a weakening of the then-extant standard for this form of relief.

**PETITION DISMISSED IN PART AND DENIED IN PART**.